## MILLER v. UNITED STATES. *
### No. 6027.

Circuit Court of Appeals, Ninth Circuit.
Feb. 9, 1931.

Robert McMillan and J. Fred McDonald, both of San Francisco, Cal., and Leo A. Sullivan, of Oakland, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Albert C. Wollenberg, Asst. U. S. Atty., both of San Francisco, Cal.

Before RUDKIN and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

KERRIGAN, District Judge.

Appellant, Clyde R. Miller, and thirteen others were indicted for conspiracy "to commit prohibited and unlawful acts of manufacturing, transporting, possessing, and selling alcohol, whisky, wine and beer." Of the seven defendants convicted, Miller alone appeals.

Appellant, when called upon to plead, moved the court for an order requiring the United States to file a bill of particulars as to certain matters sought to be alleged in the indictment. He also interposed a demurrer to the indictment. The demurrer was over-

*Rehearing denied June 3, 1931.

ruled, and the motion for a bill of particulars was denied, except for one specification.

■ At the trial, appellant did not claim any surprise arising from unexpected particulars in the proof offered by the prosecution, nor did he request a continuance to meet such unexpected particulars. In the absence of a showing that substantial rights were prejudiced by the refusal of those portions of the requested bill of particulars which were denied, appellant has no ground for complaint as to the exercise of its discretion by the court below in this regard. Rubio v. U. S. (C. C. A.) 22 F.(2d) 766; Robinson v. U. S. (C. C. A.) 33 F.(2d) 238; Wong Tai v. U. S., 273 U. S. 77, 47 S. Ct. 300, 71 L. Ed. 545.

■ In attacking the indictment, appellant in effect construes it as charging a conspiracy "to commit prohibited and unlawful acts," without more; and alleges that, as so construed, it charges a mere conclusion of law. It appears, however, that the charge is that defendants conspired to commit "acts of manufacturing, transporting, possessing and selling alcohol, whiskey, wine and beer." The words "prohibited and unlawful" serve merely to negative the possibility that certain of the acts charged as objects of the conspiracy might concern lawful dealings with liquors, and to make it clear that these acts are contrary to law. This indictment satisfies the requirement that the offenses which the defendants conspired to commit be identified with certainty, and is sufficient. Wong Tai v. U. S., 273 U. S. 77, 47 S. Ct. 300, 71 L. Ed. 545; Gibson v. U. S. (C. C. A.) 31 F.(2d) 19.

■ At the commencement of the trial, the United States attorney filed a nolle prosequi as to one of the overt acts set forth in the indictment. This is assigned as error. The several overt acts, however, are divisible parts of the indictment, and, as such, may be removed from the case by a motion to dismiss or by the entry of a nolle prosequi by the United States attorney, provided that at least one overt act remains to be proved to establish the conspiracy charged. Dealy v. U. S., 152 U. S. 539, 14 S. Ct. 680, 38 L. Ed. 545; U. S. v. Rossi (C. C. A.) 39 F.(2d) 432.

■ The chief contention upon this appeal is as to the admission of certain evidence, which is said to have been outside the scope of the conspiracy, made up of statements, declarations, and conversations not in furtherance of the objects of the conspiracy, and evidence of other crimes and offenses than that for which appellant was being tried. A brief statement of the main outlines of the conspiracy as disclosed by the record will be of assistance in determining the admissibility of this evidence. It appears that a chain of establishments where various liquors were sold was in operation in the city of Oakland. One of the conspirators was the financial backer, another the brewer of the "high proof" beer supplied to these places, a third supplied alcohol, while yet others were engaged in the manufacture and delivery of liquors to the various establishments controlled by the group. Appellant, Miller, was a policeman. Leaving out of consideration for the moment the evidence to which objection is made, there is ample evidence in the record to support a verdict finding Miller guilty as a conspirator who, knowing of the operations of the group described, afforded them protection in their various activities.

A substantial portion of the evidence offered against Miller is found in the testimony of the witness Arthur Jack. For personal reasons this witness had offered to assist the government in securing evidence of the violations of law by this particular "liquor ring." Accordingly, he got in touch with the "backer," Filipelli, with a view to opening up a place of his own in Oakland with Filipelli's assistance. There being no available location at that time, he accepted employment as a bartender at a downtown restaurant in Oakland, the Eagle,* one of the places operated by the group. He remained there from January to March, 1929, when he was finally placed in an establishment of his own in East Oakland, where he remained until May of that year, when the arrests in this case were made. During all of this period he kept notes as to conversations had with various members of the conspiracy, to which he testified at the trial. After he opened his place in East Oakland, dictaphones were installed through which government agents heard many of the conversations between the conspirators and Jack, to which they also testified.

The matter objected to, with one exception, appears in the testimony as to these conversations with Jack. The exception is the testimony of one Blodgett, a bartender at the Eagle, to the effect that Miller told him to tell Ratto, the brewer of the group, that "Mike White's had been knocked over." The relevance of this statement as tending to show a connection between Miller and at least one of the other conspirators is too plain to need discussion. Its admission was not error. The other matters complained of consist of

122

statements made by Miller himself in the presence of the witness Jack.

The record shows that Jack first met Miller shortly after he began work at the Eagle. It shows that Miller knew that Jack was to be established in a place of his own. The conversations testified to by Jack show Miller interesting himself in assisting Jack to find a suitable location, suggesting specific places where he might operate, advising him as to the type of liquor to sell and the type of place which would prove successful, and boasting of his ability to provide protection. As soon as Jack had opened his place in East Oakland, Miller became a frequent visitor. He continued to manifest his interest in Jack's success, and made various suggestions as to methods by which Jack might increase his profits. In the course of the conversations, during all of this time, he referred to his own connection with other criminal activities. These references are inextricably interwoven with his suggestions to Jack and with his admissions to Jack of his connection with others among the conspirators. The conversations, taken as a whole, were evidence relevant to the proof of the charge. Evidence which is relevant is not rendered inadmissible because it proves, or tends to prove, another and distinct offense. Johnston v. U. S. (C. C. A.) 22 F.(2d) L.

The judgment is affirmed.