**HENDERSON v. UNITED STATES.**

No. 10519.

Circuit Court of Appeals, Ninth Circuit.

June 28, 1944.

Ames Peterson and William B. Beirne, both of Los Angeles, Cal., for appellant.

Charles H. Carr, U. S. Atty., James M. Carter, and V. P. Lucas, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

Henderson appeals from his conviction and sentence upon a charge of embezzlement.

The indictment herein alleges that appellant was the duly qualified and acting chairman of War Price and Rationing Board No. 5-48 set up by the Office of Price Administration, an agency of the United States, and that, while occupying such position, he "did knowingly, wilfully, unlawfully and feloniously embezzle certain property of the United States, to-wit: 250 'A' gasoline rationing coupons, * * * which said property had * * * come into the possession of said defendant in the regular course of his official duty as Chairman of said War Price and Rationing Board as aforesaid, said defendant then and there well knowing said property to be property of the United States." A jury verdict of guilty was returned, and defendant-appellant was sentenced to imprisonment for five years. A second count of the indictment was dismissed before submission to the jury.

Appellant claims error in the denial of his motion for a directed verdict on the ground that there was no evidence to sustain the conviction. He claims that the evidence fails to establish: that the coupons allegedly embezzled were the property of the United States; that appellant had knowledge that they were property of the United States; and that they came into appellant's possession in the regular course of his official duty as chairman of the War Price and Rationing Board. In addition appellant claims error in the admission of evidence of past similar offenses not charged in the indictment.

■ It is a familiar principle, which it is our duty to apply, that an appellate court will indulge all reasonable presumptions in support of the rulings of a trial court and therefore that it will draw all inferences permissible from the record, and in determining whether evidence is sufficient to sustain a conviction, will consider the evidence most favorably to the prosecution, United States v. Manton, 2 Cir., 107 F.2d 834, 839; Shannabarger v. United States, 8 Cir., 99 F.2d 957, 961; Borgia v. United States, 9 Cir., 78 F.2d 550, 555. With this principle in mind we come directly to appellant's claim that we should declare that the jury's verdict of guilty cannot stand.

There are some rash statements in appellant's brief, and we quote: "Nowhere in the record is there any indication of an attempt upon the part of the Government to prove that the coupons were the property of the United States"; and again: "In the crime of embezzlement it is necessary that the accused shall have come into possession of the property embezzled in a fiduciary capacity; * * *. A glance at the summary of the evidence received in connection with these coupons, * * * will immediately disclose that no proof of any kind whatsoever was made as to appellant's having come into the possession of the coupons in any kind of fiduciary capacity, let alone proof that he had come into their possession in the regular course of his official duty as Chairman of the War Price and Rationing Board."

■ The proof in a criminal case need not exclude all doubt. If that were the rule, crime would be punished only by the criminal's own conscience, and organized society would be without defense against the conscienceless criminal and against the weak, the cowardly and the lazy who would seek to live on their wits. · The proof need go no further than reach that degree of probability where the general experience of men suggests that it has passed the mark of reasonable doubt.

And judges and juries do not begin the solution of the complex problems presented to them from a zero of knowledge. They start with the vast common knowledge and understanding possessed by the people. Applying such common knowledge and understanding to the evidence in this case,

can there be the slightest doubt about the essentials of this case! [1]

■ We think that the evidence was sufficient to prove that the gasoline coupons were, and that appellant knew them to be, the property of the United States. There was testimony herein that the 250 "A" gasoline coupons mentioned in the indictment passed from appellant to another, and the coupons themselves were introduced into evidence. Ration Order No. 5C of the Office of Price Administration, "Mileage Rationing: Gasoline Regulations" (C.F.R., Title 32, Ch. 11, Part 1394; Federal Register November 10, 1942), provides in Section 1394.8104(a): "All coupon books, bulk coupons, inventory coupons, other evidences, folders and tire inspection records are, and when issued shall remain, the property of the Office of Price Administration * * *." The foregoing provision was read to the jury as one of the court's instructions. The provision is conclusive to the effect that the coupons were the property of an agency of the United States. Since local rationing boards administer Ration Order No. 5C (Section 1394.7601 of the Order) and since appellant was the chairman of such a board, the inference is clear that he was aware of the quoted provision and therefore that he had knowledge of the ownership of the coupons.

Appellant acquired a supply of gasoline coupons in the regular course of his official duty as chairman of the rationing board. While away from the board's office and in suspicious circumstances he had 250 "A" gasoline coupons upon his person, and he transferred them to another, receiving from the latter a material sum of currency. How did they come into his possession? The inference is reasonable, certainly beyond a warning doubt even to a moral certainty, that they were coupons issued and placed in keeping with the board of which he was the head. What was his method of getting them without other members of the board knowing of it? Why the evidence shows that loose coupons, torn from gasoline ration books by employees of the board in issuing coupons to those entitled to them, were gathered up at the end of the day, put into a paper sack, and carried away by appellant. The instructions from the Office of Price Administration required that these remnant coupons be burned at

[1] For a discussion of the use of circumstantial evidence, including citation of numerous authorities, see People v. Graves, 137 Cal.App. 1, 9ff, 29 P.2d 807, 30 P.2d 508.

the end of each business day by the chairman of the local board, but a city ordinance provided against open fires except during prescribed hours. The inference is plain that appellant did not burn these remnant coupons, but instead, false to his position of trust in an essential war activity, he trafficked in them for money and issued them for use in direct conflict with the purpose of their issuance to him and the board. The number of "A" coupons involved was large enough to suggest that appellant had not acquired them in a private capacity, as under Ration Order No. 5C class "A" coupons are issued only for registered passenger automobiles and in limited small quantities.

It is, of course, in the realm of the possible that the coupons which were sold were not of those issued to the board, and as much can be said as to their genuineness. There may be lurking in the dark of silence some unusual, unthought-of set of circumstances which would show a monstrous mistake has been made. But the evidence is barren of any suggestions of those who might know with respect to circumstances along that line, and any such circumstance can only be conjured up by the imagination.

We now come to proof of other like offenses. The principal contention of appellant relates to the admission by the trial court, over objection, of evidence of other offenses similar to the one defined in the indictment. The same person to whom the coupons were transferred in the instant case testified that on at least six occasions, all occurring within the few months preceding the acts supporting the present charge, appellant gave gasoline coupons to the witness and that on at least three occasions appellant suggested some payment for them. The court carefully instructed the jury that the evidence was not to be considered by them for a "purpose other than the question of defendant's intent concerning the coupons charged in the indictment as having been embezzled by him," and that the other offenses "must be established by evidence which is plain, clear, and conclusive" before the jury could infer guilty intent therefrom.

Appellant admits that evidence of similar offenses is admissible to prove intent where intent is in issue but asserts that such evidence is not admissible where intent is unequivocal in the particular circumstances, citing Boyd v. United States, 142 U.S. 450,

12 S.Ct. 292, 35 L.Ed. 1077; Fish v. United States, 1 Cir., 215 F. 544, L.R.A.1915A, 809; People v. Byrnes, 27 Cal.App. 79, 148 P. 944.

The argument proceeds, however, to the claim that even though the inference of fact may be drawn that appellant sold coupons, yet it may be that such coupons were not among those issued to him and the board and that the sale was not tainted with the crime charged. As we have said: the inference that he was selling embezzled coupons was drawable from the evidence adduced, but that fact does not prevent adding assurance of conviction with the proof of intent. It is possible that appellant might have intended to hand the informer any number of other papers, instead of the coupons, and that he had no intention to commit a crime, but any such possibility vanishes when it is shown that he has repeatedly done the same thing before. The testimony, that certain gasoline coupons were collected at the rationing board and carried away by the chairman under orders to burn them, shows that the coupons could legally have been in appellant's possession at the time he handed them to the government's witness; therefore, the mere fact that he had them on his person though evidentiary of the fact of intent was not conclusive as to intent. It follows that evidence of other similar offenses was admissible to show a fraudulent plan, scheme or design, beginning with the giving away of a few coupons, going forward to the suggestion of pay, and moving logically to the acts in proof here as an integral part of it. See the statement of the proof of similar acts and the discussion of the subject with copious citations in the opinion of People v. Lisenba, 14 Cal.2d 403, 94 P.2d 569, 579–584; see also People v. Albertson, Cal.Sup., 145 P.2d 7, 22 and 31.

Our conclusion that the introduction of evidence of other similar events is proper in this case, if not expected by appellant, was at least anticipated by him. He argues to the conclusion that even if evidence of similar offenses were admissible in the case, the evidence of that nature actually received was not sufficient to establish the claimed similar offenses. In this we differ from appellant. It is appropriate to add that the court instructed the jury with precise accuracy as to the amount of proof necessary in connection with the other offenses. Therefore, the jury was aware of the correct rule to be followed,

and there was sufficient evidence to prove the offenses in accord with the standard set by the rule.

The point is raised by the government-appellee that appellant's contentions on appeal should not be considered by this court in view of our rule 11(b), requiring the full substance of evidence admitted or rejected to be set forth in an assignment of errors when error is alleged to such admission or ·rejection. There can be no doubt that the rule was not observed by appellant herein. However, by subdivision (d) of rule 11 this court in its discretion may notice a plain error of the trial court not assigned. Appellant's opening brief herein left no question as to the points being argued on appeal. The government could have been in no way prejudiced by appellant's failure to comply with the rule. Therefore, we have exercised our discretion to consider the merits of the appeal.

Affirmed.